IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 22-cv-02391 <br><br> **Hon. Steven C. Seeger** <br><br> **Magistrate Judge Gabriel A. Fuentes** |

### PLAINTIFF'S STATEMENT REGARDING ASSET FREEZE

Pursuant to this Court's Minute Entry [23], Plaintiff Christian Dior Couture, S.A. ("Plaintiff") files the following statement.

**I.     Brand Owners Are Required to Enforce Their Intellectual Property Rights**

The Seventh Circuit has recognized as far back as the 1980s that the sale of counterfeit merchandise is a massive worldwide problem. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989). "The law imposes on trademark owners the duty to be pro-active and to police the relevant market for infringers." McCarthy on Trademarks and Unfair Competition § 11:91 (5th ed.). Offshore online counterfeiters like Defendants use a variety of tactics to deceive consumers and to avoid detection by brand owners and law enforcement. [1-8] at 32-34. For example, counterfeiters hedge against the risk of being caught by preemptively establishing multiple virtual store-fronts: "[r]apid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked." [1] at ¶¶ 19, 24; [1-9] at 11. Counterfeiters also regularly move funds from their financial accounts to offshore bank accounts outside the jurisdiction of the U.S. District Courts to avoid payment of any monetary judgment, whether it be profits or damages. [15] at ¶ 6; [1] at ¶ 27. The U.S. Department of Homeland

Security's Office of Strategy, Policy, and Plans found that "American enterprises have little recourse aside from initiating legal action against a particular vendor." [1-9] at 20. As such, brand owners must file "Schedule A" cases, including seeking an asset restraint, to effectively police their brands.

**II.     This Court Has Authority to Enter an Asset Restraint Since Plaintiff Seeks an Equitable Remedy.**

"[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Johnson & Johnson v. Advanced Inventory Mgmt.*, 2020 U.S. Dist. LEXIS 248831, at *8 (N.D. Ill. Jul. 20, 2020) (citations omitted). An accounting of profits is an equitable remedy. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 130-133 (2d Cir. 2014). As this Court acknowledged, a restraint on assets is proper if a suit seeks equitable relief. [23]; s*ee also, CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *Lorillard Tobacco Co. v. Montrose Wholesale Candies,* 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) (finding that the Supreme Court in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999) "made note of the fact that a restraint on assets was still available when the suit sought an equitable relief.").

Plaintiff seeks equitable relief in an accounting of Defendants' profits. Complaint [1], Prayer for Relief at ¶ 4 ("That Defendants account for and pay to Dior all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CHRISTIAN DIOR Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117"). Section 35 of the Lanham Act

provides that a plaintiff in a trademark infringement action shall be entitled "subject to the principles of equity, to recover (1) defendant's profits…." 15 U.S.C. § 1117(a). Additionally, the court has discretion under Section 1117(a), which states "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a); *see also*, *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *17 ("A counterfeiter must fear more than just having to turn over his ill-gotten gains to the rightful owners."). To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *See e.g., Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). Other courts in this District have recently entered asset restraints in Schedule A cases while addressing *Grupo Mexicano*:

> The Plaintiff's motion [15] for temporary restraining order and other relief is granted. An order will be entered under seal separately. Although the Court again expresses its concern about restraining assets before judgment, *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 331 (1999), the Plaintiff does invoke a statutory remedy, namely, an accounting of profits (that is, disgorgement of profits) under 15 U.S.C. § 1117(a), which is not a mere common-law equitable claim and thus could allow for pre-judgment restraint. Indeed, trademark owners need only "prove defendant's sales only; defendant must prove all elements of costs or deduction claimed." 15 U.S.C. § 1117(a). To the extent that the restraint might be too broad, the Defendant may appear and file challenges to the scope of the TRO. The balance of factors tips in favor of Plaintiff being able to freeze the assets without advance warning to the Defendant, who likely would seek to transfer the money elsewhere.

*Toyota Motor Sales, U.S.A., Inc. v. The Partnerships, et al.*, No. 22-cv-03850 (N.D. Ill. Aug. 5, 2022) (Docket Entry No. 25).

Plaintiff also seeks an award of statutory damages as an alternative for an accounting of Defendants' profits.[1] With the addition of Section 35(c) of the Lanham Act, Congress made statutory damages available in counterfeiting cases as an alternative to actual damages and profits "[t]o help stem an increasing wave of counterfeiting activity." McCarthy on Trademarks and Unfair Competition § 30:95 (5th ed.). Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003); *see also*, *Design Basics, LLC v. Drexel Bldg. Supply, Inc.*, 2016 U.S. Dist. LEXIS 137713, *21 (E.D. Wisc. Oct. 4, 2016) ("juries do not award statutory damages, judges do."). Congress' rationale for statutory damages was to address plaintiffs' practical inability to determine defendants' profits or sales, recognizing that "counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . . , making proving actual damages in these cases extremely difficult if not impossible." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (quoting S. Rep. No. 104-177, at 10 (1995)). Indeed, plaintiffs are unable to obtain an accounting of profits in Schedule A cases because of the counterfeiters' willful decision to ignore the Court's orders to produce documents or otherwise participate in the case. Counterfeiters should not be able to avoid a pre-judgment asset restraint authorized by the Lanham

---

[1] The Court's Minute Entry states that "statutory damages are a remedy at law." [23]. The Seventh Circuit has not considered whether statutory damages in trademark counterfeiting cases are a legal or equitable remedy. The Supreme Court in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345, 118 S. Ct. 1279, 1283, 140 L. Ed. 2d 438 (1998) found that the right to a jury trial includes the right to have a jury determine the amount of copyright statutory damages. However, the statute providing statutory damages for copyright infringement, 17 U.S.C. § 504(c), is different from the corresponding trademark statute, 15 U.S.C. § 1117. For example, 15 U.S.C. § 1117 includes specific language indicating that the "plaintiff shall be entitled…, subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction." 15 U.S.C. § 1117 (emphasis added). 17 U.S.C. § 504(c) does not include language regarding the principles of equity.

4

Act's express grant of a right to an accounting of profits by ignoring the Court's discovery orders or electing not to participate in the case.

### III. Alternatively, Plaintiff Is Entitled to an Attachment of Defendants' Assets under Fed. R. Civ. P. 64 and Section 4-101 of the Illinois Compiled Statutes

While not sought in its initial filing, Plaintiff is also entitled to restrain assets for payment of an equitable or legal judgment pursuant to Fed. R. Civ. P. 64. Fed. R. Civ. P. 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This relief is separate from the relief available to Plaintiff through Fed. R. Civ. P. 65 and is not barred by the Supreme Court's decision in *Grupo Mexicano*. *M.S. Distrib. Co. v. Web Records, Inc.,* 2003 U.S. Dist. LEXIS 9092, at *11 (N.D. Ill. May 29, 2003) ("*Grupo Mexicano* in no way undermines the authority of this Court, conferred by Fed. R. Civ. P. 64, to use the Illinois prejudgment attachment statute.").

Under Illinois law, the Illinois prejudgment attachment statute empowers this Court to issue an attachment order to the sheriff, ordering the officer to attach Defendants' property in Cook County once the statutory requirements are met. 735 Ill. Comp. Stat. 5/4-101. The purpose of the Illinois prejudgment attachment statute "is to bring assets within the control of the Court *before* there is the opportunity for them to be dissipated or otherwise rendered unavailable to satisfy a judgment." *M.S. Distrib.*, 2003 U.S. Dist. LEXIS 9092, at *11. Plaintiff satisfies the statutory requirements of the Illinois prejudgment attachment statute. Plaintiff is a creditor with a monetary claim arising from a tort cause of action, because trademark infringement is a commercial tort and Plaintiff is entitled to a maximum award of $2,000,000 in statutory damages, as well as attorney's fees, from Defendants' willful counterfeiting. *See Hard Rock Café Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1148 (7th Cir. 1992) ("we have treated trademark infringement as a species

5

of tort"). Defendants are residents of the People's Republic of China and not of Illinois. *See* [1] at ¶ 16. Accordingly, pursuant to Fed. R. Civ. P. 64, Plaintiff can restrain Defendants' accounts to secure satisfaction of the potential judgment before Defendants have the opportunity to dissipate the assets.[2]

**IV.    The Court Has Authority to Transfer Funds Restrained Post-Judgment**

15 U.S.C. § 1117(c) provides that "plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages….as the court considers just." 15 U.S.C. § 1117(c). As such, Plaintiff is not required to make an election on the damages sought until final judgment is sought. While many Schedule A cases ultimately elect for a statutory damages award because defendants refuse to appear, other Schedule A cases in this District have sought a profits award. *See, e.g., Luxottica Grp., S.p.A. v. Zeng Youzhong*, No. 19-cv-08146 (N.D. Ill. Apr. 07, 2020) (unpublished) (Docket No. 59); *Oakley, Inc. v. Yiwu Friends Glasses Co.*, No. 21-cv-05017 (N.D. Ill. Dec. 16, 2021) (unpublished) (Docket No. 47); *Oakley, Inc. v. Shop1962194 Store*, No. 21-cv-03997 (N.D. Ill. Oct. 12, 2021) (unpublished) (Docket No. 53); *Deckers Outdoor Corp., v. Shop1021070 Store*, No. 21-cv-00989 (N.D. Ill. May 17, 2021) (unpublished) (Docket No. 44). Either way, the Court has the authority to transfer identified funds to Plaintiff when a judgment is entered.

The Supreme Court's decision in *Grupo Mexicano*—noting the difference between equitable and legal actions—was concerned solely with a federal court's right to issue a *pre*-judgment asset freeze. *Grupo Mexicano*, 527 U.S. at 325 (reasoning that "[t]he *preliminary* relief available in a suit seeking *equitable* relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a *legal* debt" (emphasis added));

---

[2] If necessary for Plaintiff to seek an order for attachment, Plaintiff will submit an affidavit as specified by 735 Ill. Comp. Stat. 5/4-104. 735 Ill. Comp. Stat. 5/4-107.

6

*Grupo Mexicano*, 527 U.S. at 317 (observing that "Petitioners d[id] not contest the District Court's power to issue *a permanent injunction after rendering a money judgment* against them" (emphasis added)).

In contrast to the plaintiffs in *Grupo Mexicano*, plaintiffs in Schedule A cases typically ask the Court for a post-judgment asset turnover. There is no question that a federal court has the power to restrain and transfer assets under Illinois state law, as incorporated by Fed. R. Civ. P. 69. Fed. R. Civ. P. 69(a)(1) provides that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located." The Seventh Circuit has recognized that "Illinois law, in turn, provides the court with a variety of tools that can be used to satisfy a judgment. For example, the court may issue citations ordering parties and nonparties to turn over information, it may order parties and non-parties to transfer funds to satisfy a judgment, and— as is germane here—it may summarily compel a party or non-party to produce funds within their control." *Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 188 (7th Cir. 2011) (citing 735 ILCS 5/2-1402(a)-(c)). "These powers are to be *broadly construed*, providing the district court with the authority to enter a wide variety or orders to ensure that usable assets are located, seized, and – where appropriate – applied to the judgment." *Id*. See also *Dexia Credit Local v. Rogan*, 629 F.3d 612, 624 (7th Cir. 2010) (finding a district court may inquire as to whether third parties hold assets of the judgment debtor, and once it is discovered that a third party holds such assets, the court may order the third party "to deliver up those assets to satisfy the judgment"). A district court may "summarily compel the application of discovered assets to satisfy a judgment." *Soc'y of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135 (7th Cir. 2001). As such, the turnover of identified funds to satisfy a judgment, whether it be an award of profits, actual damages or statutory damages, is proper.

Dated this 11th day of August 2022.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Kasey L. Ewald
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
kewald@gbc.law

*Counsel for Plaintiff Christian Dior Couture, S.A.*